536 So.2d 202 (1988)
Robert TINGLE, Petitioner,
v.
STATE of Florida, Respondent.
No. 70408.
Supreme Court of Florida.
December 1, 1988.
*203 James B. Gibson, Public Defender and James R. Wulchak, Chief, Appellate Div., Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for petitioner.
Robert A. Butterworth, Atty. Gen. and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for respondent.
EHRLICH, Chief Justice.
We have for review Tingle v. State, 503 So.2d 1304 (Fla. 5th DCA 1987) because of conflict with Scott v. State, 420 So.2d 595 (Fla. 1982), and Kothman v. State, 442 So.2d 357 (Fla. 1st DCA 1983). We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and quash the decision below.
Tingle was convicted of sexual battery of a child (his daughter) under the age of eleven years under section 794.011(2), Florida Statutes (1985). Two motions regarding Tingle's competency were filed. The first, a "Motion to Determine Competency to Stand Trial" was filed September 5, 1985. This motion made reference to Florida Rule of Criminal Procedure 3.210 and requested an examination by no more than three, nor fewer than two, experts. The first motion alleged that while in defense counsel's presence Tingle had attempted to stab himself with a ball-point pen. This motion was denied after the court reviewed Tingle's Tri-County Mental Services file and interviewed emergency response personnel who had observed Tingle after the "suicide attempt." In a similar motion which was filed on September 21, 1985, defense counsel recited that she believed her client was hallucinating and that Gloria Branscum, a Tri-County Mental Health worker, had the "informal impression that Tingle suffers from a paranoid schizophrenic process." There is no formal denial of this motion in the record. However, while the jury was deliberating, the trial judge noted that he had called Ms. Branscum but she was not available. So, he reviewed the mental health file and spoke to other emergency response personnel and found "no mention of any such diagnosis." We agree with the district court below that the second motion was effectively denied by the trial court's failure to rule on it.
On appeal, the district court affirmed the denial of these motions, concluding that "[a]lthough defense counsel alleged various bizarre behavior by the defendant while he was in prison awaiting trial, it does not substantially establish appellant lacked the ability to assist defense counsel in preparing his defense." 503 So.2d at 1305. We agree with Tingle that this reasoning is contrary to the standard to be employed in ruling on a motion to determine a defendant's competency to stand trial, as set forth by this Court in Scott v. State, 420 So.2d 595 (Fla. 1982).
In Scott, we stated that in ruling on a motion made pursuant to Florida Rule of Criminal Procedure 3.210, "`the question before the court is whether there is reasonable ground to believe the defendant may be incompetent, not whether he is incompetent.'" 420 So.2d at 597 (quoting Walker v. State, 384 So.2d 730, 783 (Fla. 4th DCA 1980)). See also Hill v. State, 473 So.2d 1253, 1256 (Fla. 1985). Under the circumstances present in this case, there were reasonable grounds to believe Tingle may have been incompetent. The trial judge's independent investigation was not sufficient to ensure that Tingle was not deprived of his due process right of not being tried while mentally incompetent. See Scott, 420 So.2d at 598. Florida Rule of Criminal Procedure 3.210 sets forth the procedure to be employed within this state for safeguarding that right. Rule 3.210 provides in pertinent part:
(b) If before or during the trial the court of its own motion, or upon motion of counsel for the defendant or for the State, has reasonable ground to believe that the defendant is not mentally competent to stand trial, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition, which shall be held no later than 20 days after the date *204 of the filing of the motion, and shall order the defendant to be examined by no more than three nor fewer than two experts prior to the date of said hearing. Attorneys for the State and the defendant may be present at the examination.
Under this rule, prior to hearing, the defendant will be evaluated by at least two experts who are required to provide written reports to the court pursuant to Florida Rule of Criminal Procedure 3.211. At the hearing to determine competency to stand trial, the appointed experts may be called by either party or the court. Fla.R.Crim.P. 3.212. Defense counsel will be given the opportunity to present all evidence, including the testimony of these experts, which tends to establish that the defendant does not have the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or that he does not have a rational as well as a factual understanding of the proceeding being brought against him. Fla.R.Crim.P. 3.212; Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Hill, 473 So.2d at 1257; Scott, 420 So.2d at 597.[1]
As we have previously noted in Scott and Hill, a hearing to determine whether a defendant was competent at the time he was tried generally cannot be held retroactively. Scott, 420 So.2d at 598; Hill, 473 So.2d at 1259; see also Drope v. Missouri, 420 U.S. 162, 183, 95 S.Ct. 896, 909, 43 L.Ed.2d 103 (1975); Dusky, 362 U.S. at 403, 80 S.Ct. at 789. Therefore, because Tingle was entitled to a hearing on his competency to stand trial, we vacate the conviction and sentence and remand for retrial after it has been determined that he is competent to stand trial.[2]
We also find merit to Tingle's challenge of certain testimony which was presented by the state and address this claim to avoid error on retrial. On appeal, Tingle challenged the admissibility of opinion testimony of an intake counselor with the Department of Health and Rehabilitative Services (HRS) and of a social worker with the University of Florida's Department of Pediatrics Child Protection Team. The district court merely "affirmed" on this issue, with no discussion. 503 So.2d at 1304.
During its case-in-chief the state presented the testimony of Dennis Girard, the HRS intake counselor who initially investigated the case after receiving a report from a neighbor that Tingle's daughter had told the neighbor and her daughter that Tingle had "messed" with her. Mr. Girard testified that it is his responsibility to investigate a reported incident of child abuse and to make a determination if the matter should be referred to the Child Protection Team. Mr. Girard described his interview with the victim and her demonstration with anatomically correct dolls of what allegedly occurred between her and her father. He was then asked by the state, "Did you believe that she was in fact telling the truth?" Defense counsel objected, arguing that such testimony would invade the province of the jury and would unduly bolster the victim's credibility. After the objection was overruled, the question was rephrased, "Did you believe the child?" To which he answered, "Yes, I did." Mr. Girard then explained the factors he took into consideration in determining if the child was being truthful. Later in the questioning, Mr. Girard was asked, "Do you believe that this child was sexually abused?" Mr. Girard *205 answered, "Yes." The state then asked, "Do you have any doubt?" Mr. Girard answered, "No." Defense again objected and was again overruled.
Donna Watson-Lawson, a social worker, was qualified as an expert on child sexual abuse without objection. Ms. Watson-Lawson, among other things, testified as to her interviews and meetings with the victim and how the victim's actions were consistent with those of other children who had been sexually abused. Ms. Watson-Lawson was asked, "Now, with this child, or as part of that, do you ever make a determination as to whether or not you find the child to be credible, to believe that she's telling the truth or not?" She answered, "Yes, I do." She then testified that she did that in this particular case and the determination was "that [she] believed the child was telling the truth." No objection was made.[3] Ms. Watson-Lawson then continued to testify concerning the factors used in determining whether a child is telling the truth about being sexually abused.
We agree with Tingle that it was error to have allowed Mr. Girard and Ms. Watson-Lawson to vouch for the victim's credibility. In Glendening v. State, 536 So.2d 212 (Fla. 1988) we recently addressed a similar claim. In Glendening, an expert in the area of child abuse testified that in her opinion the child "`has been sexually abused by her father [the defendant].'" Id. at 220. Although we concluded that it was proper for an expert to express an opinion as to whether a child has been the victim of sexual abuse, we held that it "was improper for the expert witness to testify that it was her opinion that the child's father was the person who committed the sexual offense."[4]Id. at 221.
In Glendening, we did not reach the issue of whether it is proper for an expert witness to give an opinion as to the truthfulness of the victim. The state appears to concede that it is generally accepted that expert testimony may not be offered to directly vouch for the credibility of a witness, see Kruse v. State, 483 So.2d 1383 (Fla. 4th DCA 1986); Townsend v. State, 734 P.2d 705, 709 (Nev. 1987); United States v. Azure, 801 F.2d 336 (8th Cir.1986), but seems to urge that any error was harmless. We agree that it was error for the state's witnesses to directly testify as to the truthfulness of the victim; however, we need not decide whether the error was harmless since we have already determined that Tingle is entitled to a new trial.
As guidance to the state on retrial, we adopt the position taken by the Eighth Circuit Court of Appeals in Azure. We agree with the Azure court that, in cases such as this, "some expert testimony may be helpful, but putting an impressively qualified expert's stamp of truthfulness on a witness' story goes too far." 801 F.2d at 340. As noted by the Eighth Circuit, an expert may properly aid a jury in assessing the veracity of a victim of child sexual abuse
without usurping their exclusive function by generally testifying about a child's ability to separate truth from fantasy, by summarizing the medical evidence and expressing his opinion as to whether it was consistent with [the victim's] story that she was sexually abused, or perhaps by discussing various patterns of consistency in the stories of child sexual abuse victims and comparing those patterns with patterns in [the victim's] story.
Id. We recognize that expert testimony such as this, by its very nature, to some degree will tend to either bolster or refute the credibility of the child victim; however, the ultimate conclusion as to the victim's credibility always will rest with the jury. The expert will merely be equipping the jury with the knowledge necessary to make this determination.
Accordingly, the decision of the district court is quashed, and the cause is remanded *206 for further proceedings consistent with this opinion.
It is so ordered.
OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Although we express our disapproval of the trial court's actions in this case, where the motions of defense counsel provided reasonable grounds to question the defendant's competency, we recognize that there may be situations in which a trial judge may feel compelled sua sponte to investigate whether there exist reasonable grounds to believe the defendant may be incompetent to stand trial. We do not wish to discourage inquiry by the trial court which is not employed as a substitute for the procedures set forth in rule 3.210 but is employed in an attempt to determine whether such safeguards are warranted.
[2] We reject Tingle's contention that the motions were made pursuant to Florida Rule of Criminal Procedure 3.216 (incompetency to stand trial and insanity at time of offense). We agree with the district court that "the thrust and purpose for both motions were apparently understood and accepted by both defense counsel and the trial court as having been made pursuant to rule 3.210 rather than rule 3.216." Tingle v. State, 503 So.2d 1304, 1306 (Fla. 5th DCA 1987).
[3] Because retrial is warranted under Tingle's first claim, we need not address the state's contention that Tingle's challenge to the admission of Watson-Lawson's testimony was not preserved for appellate review.
[4] On retrial, if Mr. Girard is properly qualified an as an expert, his opinion that the victim had been sexually abused will be proper under our opinion in Glendening.